# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| *In re Family Dollar Stores, Inc., Pest* <br><br> *Infestation Litigation* <br><br><br> **This Document Relates To**: <br><br> **ALL CASES** | MDL No. 3032 <br><br> Case No. 2:22-md-03032-SHL-TMP |

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CONSOLIDATED CLASS ACTION SETTLEMENT</u>

## INTRODUCTION

Under the terms of a Settlement Agreement dated June 15, 2023[1], Defendants Family Dollar Stores of Tennessee, LLC; Family Dollar Stores of Arkansas, LLC; Family Dollar Stores of Alabama, LLC; Family Dollar Stores of Louisiana, LLC; Family Dollar Stores of Mississippi, LLC; Family Dollar Stores of Missouri, LLC; Family Dollar Services, LLC; Family Dollar, LLC (formerly Family Dollar, Inc.); and Family Dollar Stores, LLC (formerly Family Dollar Stores, Inc.); ("Defendants"), have agreed to pay the Settlement Class[2] members fully transferable, non-

---

[1] Capitalized terms have the same meanings set forth in the June 19, 2023 Settlement Agreement attached as Exhibit 1.

[2] The Settlement Class is defined within the Settlement Agreement as follows:
> All Persons who, from January 1, 2020, through February 18, 2022, inclusive, purchased any product from an Affected Family Dollar Store. Settlement Agreement at ¶ 1.33. Excluded from the Settlement Class are the following classes of persons:
> (i) Defendants, (ii) Defendants' agents, parents, officers, predecessors, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates of Defendants; (iii) Class Counsel and any other attorneys who represent Settlement Class Representatives or the Settlement Class in this Action, as well as their agents and employees; (iv) the judicial officers and court staff assigned to this case, as well as their immediate family members; and (v) Persons who timely request to be excluded from this Settlement as provided in [¶] 9.

*Id.*

expiring Family Dollar Gift Cards which may be used in conjunction with other promotions or discounts at any usable at any Family Dollar store. In exchange for this valuable relief, the Plaintiffs have agreed to dismiss this litigation with prejudice and release Defendants and related parties.

This Settlement Agreement comes in the wake of over a year of hard-fought litigation, the review and analysis of extensive fact discovery, third party discovery, an inspection of Family Dollar's West Memphis Distribution Center, the consultation and disclosure of multiple experts, the taking of numerous depositions, and two rounds of intense and arm's length mediation negotiations with well-respected and experienced mediators between the Parties.

This Settlement is fair and reasonable and satisfies the requirements of Fed. R. Civ. P. 23(e). Counsel for both sides are highly experienced in consumer protection litigation and well-positioned to assess the risks and merits of the case. As detailed below and in the supporting documents, this case involves allegations of rodent presence at Family Dollar's West Memphis Distribution Center. The lawsuit further alleges that, as a result, Family Dollar sold potentially contaminated products in certain Family Dollar stores located in the states of Arkansas, Alabama, Louisiana, Mississippi, Missouri, and Tennessee. In the face of material risks of an adverse outcome or the potential for lengthy delays and appeals, the Settlement Agreement represents a meaningful recovery for the Settlement Class.

Plaintiffs therefore ask—and Defendants do not oppose—that the Court enter the accompanying proposed Preliminary Approval Order that will: (i) preliminarily approve the Settlement; (ii) provisionally certify the Settlement Class under Fed. R. Civ. P. 23 for settlement

purposes only; (iii) appoint ten Class Representatives[3] and designate J. Gerard Stranch, IV, Sarah

Sterling Aldridge, and Charles J. LaDuca as Settlement Class Counsel[4]; (iv) approve the notice

plan for the Settlement Class; (v) appoint Angeion Group LLC ("Angeion") as Settlement Claims

Administrator; and (vi) approve the proposed schedule for completing the settlement process and

set a date for a final Fairness Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are customers of Family Dollar. This case involves allegations that Family

Dollar's West Memphis Distribution Center lacked proper pest control and exhibited unsanitary

conditions leading to the presence of rodents in Family Dollar's West Memphis Distribution

Center. Because of Defendants' alleged conduct, Plaintiffs in Alabama, Arkansas, Louisiana,

Mississippi, Missouri, and Tennessee, filed deceptive trade practices claims against Defendants

for their alleged acts and omissions. On June 2, 2022, the Judicial Panel on Multidistrict Litigation

these actions were consolidated into a single MDL proceeding, under the caption *In re Family

Dollar Stores, Inc., Pest Infestation Litigation*, No. 2:22-md-03032-SHL-TMP in the Western

District of Tennessee.

The proposed Settlement Class Representatives filed a Consolidated Complaint in the

MDL on August 12, 2022. The Consolidated Complaint alleged, *inter alia*, that rodents were

present at Family Dollar's West Memphis Distribution Center, and that the West Memphis

Distribution Center and Affected Family Dollar Stores "lacked proper pest control and exhibited

unsanitary conditions." Settlement Agreement ¶ 2.2. The Consolidated Complaint included claims

---

[3] The ten proposed Settlement Class Representatives are Sheena Bibbs, Tina Bishop, Beverly Gordon, Julian Graves, Martha Lacy, Taylor Lorimer, Sonya Mull, jVinnie Smith, Sandra Walker, and Jerome Whitney. Settlement Agreement ¶ 1.35.

[4] The Court appointed J. Gerard Stranch, IV, and Sarah Sterling Aldridge, as Plaintiff's Co-Lead Counsel (DE 45), and Charles LaDuca was appointed by the Court to the Plaintiff's Steering Committee (Dkt. 47). Settlement Agreement ¶ 1.8.

for negligence, negligence *per se*, negligent failure to warn, breach of implied warranty, unjust enrichment, fraudulent concealment and failure to disclose, as well as, violations various state's Deceptive Trade Practice and Consumer Protection Acts[5] and declaratory and injunctive relief. *Id*. Plaintiffs filed an Amended Consolidated Complaint on October 17, 2022 containing additional exhibits and allegations. *Id.* ¶ 2.4.

Defendants moved to dismiss Plaintiffs' Consolidated Complaint on September 26, 2022, and Plaintiffs' Amended Consolidated Complaint on October 20, 2022.  Settlement Agreement ¶¶ 2.3, 2.5; Dkt. 77; Dkt. 89.  A hearing took place concerning Defendants' Motion to Dismiss Plaintiffs' Amended Consolidated Complaint on December 20, 2022. *Id*. ¶ 2.5. A ruling on the motion remained pending as of the date the Parties notified the Court of this Settlement. *Id.* ¶ 2.6.

Prior to the filing of this matter, Plaintiffs conducted "extensive investigation of the facts and circumstances related to the allegations in the Action." *Id*. ¶ 2.8. Plaintiffs also undertook significant discovery efforts, including serving 18 interrogatories, 58 requests for admission, 46 document requests, and disclosing four expert witnesses. *Id*. ¶ 2.9. Plaintiffs served numerous third-party subpoenas and issued Freedom of Information Act (FOIA) requests which resulted in the production of tens of thousands of pages of documents. In late 2022, Plaintiffs and an expert inspected the West Memphis Distribution Center. Defendants produced for review more than 24,000 pages of documents for review and disclosed six experts. *Id*. Plaintiffs produced more than 6,000 pages of documents. *Id.* Additionally, Defendants took and Plaintiffs defended seven Settlement Class Representatives depositions. *Id*.

---

[5] The list includes Alabama DTPA (Ala. Code § 8-19-1, *et seq*.); Arkansas DTPA (Ark. Code Ann. § 4-88-101, *et seq*.); Louisiana Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. § 51:1401, *et seq*.); Mississippi Consumer Protection Act (Miss. Code Ann. § 75-24-1, *et seq*.); Missouri Merchandising Practices Act (Mo. Rev. Stat § 407.101, *et seq*.); and Tennessee Consumer Protection Act (Tenn. Code Ann. § 47-18-101, *et seq*.).

On November 9, 2022, the Parties engaged in a mediation session, overseen by experienced and impartial mediator, Randall W. Wulff of Wulff Quinby Sochynsky. *Id.* ¶ 2.7. The Parties did not reach an agreement as a result of this mediation, and instead agreed to revisit settlement discussions at a later date. *Id.*

On April 18, 2023, the Parties engaged in a second round of mediation in front of retired Tennessee Supreme Court Chief Justice Janice M. Holder from the Tennessee Academy of Mediators & Arbitrators. *Id.* ¶ 2.12. From this mediation, the Parties reached a Settlement Agreement, which they "intend [will] completely resolve any and all claims that were, or could have been, asserted in the action." *Id.*

## TERMS OF THE SETTLEMENT AGREEMENT

The Settlement Agreement contains the following key terms:

### 1. The Settlement Class Definition

All Persons who, from January 1, 2020, through February 18, 2022, inclusive, purchased any product from an Affected Family Dollar Store.

*Id.* at ¶ 1.33.

### 2. Family Dollar Gift Card Compensation

As a form of monetary relief for the Settlement Class members, the Family Dollar Defendants have agreed to provide eligible Settlement Class Members who submit Approved Claims with a $25 Family Dollar Gift Card. Importantly, these gift cards are (a) limited to one per household; (b) may be used to purchase any item sold at Family Dollar stores, excluding purchases "prohibited or restricted by state law (such as alcohol and tobacco);" (c) are fully transferable; (d) can be used in conjunction with other promotions or discounts, including manufacturers' coupons and discounts; (e) will not expire; (f) do not require separate purchase or the use of the Settlement Class Member's money; and (g) can be used over multiple discrete transactions until the value is

exhausted. *Id.* ¶¶ 1.14, 4.1, 4.2. To be eligible for the above-described Gift Card, a claimant shall submit to the Settlement Administrator a valid claim and have the same approved by the Administrator. The $25 Family Dollar Gift Card has a fixed value as opposed to a coupon.[6]

### 3. Notice and Settlement Administration Costs

Defendants have retained Angeion, a highly experienced, well-regarded, third-party administrator to provide notice to the Settlement Class and to handle the administration of the claims. Defendants agree to pay all reasonable and necessary costs associated with the Settlement Administrator in performing its duties. Settlement Agreement ¶ 8.10.

Notice will include an ADA complaint internet website that will provide Settlement Class Members with:

> (1) the Settlement Agreement, "generalized information about the Settlement, its scope, its remedies with a clickable table of contents; answers to frequently asked questions; a contact information page that includes the address for the Claim Administrator and addresses and telephone numbers for Class Counsel; (2) deadlines for opting out of or objecting to the Settlement, and the dates of relevant Court proceedings, including the Final Approval Hearing; (3) a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; (4) information on making a claim and a downloadable and online version of the Claim Form; and (5) relevant legal documents like this Settlement, the Amended Complaint, the signed order of Preliminary Approval, notices, and (when it becomes available) Plaintiffs' application for Attorneys' Fees and Expenses and/or an application for Service Awards. The website is to remain active until after the Effective Date and distribution of all settlement benefits. The URL of the Settlement Website shall be provided in the Notice Plan."

*Id.* ¶ 8.2. Defendants will provide the Settlement Administrator with the email addresses of those Family Dollar customers for whom Defendants have email addresses and some objective indication that the customer lives in an area serviced by an Affected Family Dollar Store. *Id.* ¶ 8.3.

---

[6] *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950-52 (9th Cir. 2015) (noting that gift cards with an actual cash value, that have no expiration date, are freely transferrable, and can be used for literally thousands of products for which ordinary consumers need at a store with thousand of products are not coupons) (*citing Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241, 255–56 (E.D.Pa.2011))

The Settlement Administrator will additionally facilitate notice through programmatic display ads, search engine marketing, and publication in *People* magazine in the pertinent geographic areas. It is expected that 80.17% of the Target Audience will see a digital advertisement concerning the Settlement an average of 3.36 times each. *See* Decl. of S. Weisbrot ("Weisbrot Decl.") at ¶ 13, attached as Exhibit B to the Settlement Agreement.

### 4. CAFA Notice.

This settlement is subject to the requirements of the Class Action Fairness Act of 2005, which requires that notice containing certain required information be served upon the appropriate State and Federal officials. 28 U.S.C. § 1715(b). The Settlement Administrator will prepare and mail the CAFA notice. Settlement Agreement at ¶ 12.

### 5. Claims

Settlement Class Members who wish to receive a Family Dollar Gift Card will be required to submit a Claim Form.  The Claim Form will require the Settlement Class Member to:

> (a) certify, under penalty of perjury, that from January 1, 2020, through February 18, 2022, inclusive, they personally purchased a product from an Affected Family Dollar Store; (b) provide some confirmation that the Settlement Class Member shopped at one of the Affected Family Dollar Stores; and (c) provide an objective indication that the Settlement Class Member lives in a trade area serviced by an Affected Family Dollar Store.  The Claim Forms shall be submitted to the Settlement Administrator via U.S. mail or electronically through the Settlement Website.  All Claim Forms must be postmarked or electronically submitted by the Claims Submission Deadline; Claim Forms that do not meet the Claims Submission Deadline will not be Approved Claims.

*Id*. ¶ 8.4.

### 6. Request for Exclusion

The Settlement also gives Class Members the option to opt out of the Settlement or object to the Settlement. Any Person may exclude themselves from the Settlement and must submit a written Request to Opt-Out to the Settlement Administrator by the Opt-Out Deadline.  *Id*. ¶ 9.1.

Any Person who submits a valid and timely Request to Opt-Out will not: (i) be bound by any orders or judgments entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or (iv) be entitled to object to any aspect of the Settlement. *Id.* ¶ 9.5.

### 7. Objections

Any Settlement Class Member may object to the Settlement by submitting a written objection to the Court, Class Counsel, Defense Counsel, and the Settlement Administrator, on or before the Objection Deadline. *Id*. ¶ 10.1.

The objection must include the following:

a)    The case name and number of the Action;

b)    The full name, address, telephone number, and email address of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel;

c)    A statement that the objector personally purchased a product from an Affected Family Dollar Store, from January 1, 2020, through February 18, 2022, and that none of the exclusions listed in the definition of the Settlement Class in Paragraph 1.33 applies to the objector;

d)    A list of the Affected Family Dollar Store(s) from which the objector purchased a product from January 1, 2020 through February 18, 2022;

e)    Any supporting papers, materials, or briefs the objector wishes the Court to consider when reviewing the objection;

f)    A statement of whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class;

g)    A statement of the number of times in which the objector (and, where applicable, objector's counsel) has objected to a class action settlement within the five years preceding the date that the objector files the objection, along with the caption of each case in which the objector has made such objection;

h)    A statement of the specific grounds for the objection, including any legal and factual support and any evidence in support of the objection;

i)    A statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel; and

j)    The objector's signature.

### 8. Release

In exchange for the monetary relief, Released Parties as identified in the Settlement Agreement will receive a release of all claims that the Settlement Class members brought or could have brought resulting from, arising out of, based on, or relating to the practices and claims that were or could have been alleged in the Consolidated Amended Complaint. *Id*. ¶¶ 6.1–6.4. Importantly, this release excludes all eligible Settlement Class members who successfully opt out by the Opt-Out Deadline. *Id*. ¶ 6.6.

### 9. Attorney's Fees and Costs and Class Representative Service Award

Class Counsel will apply to the Court for an award of Attorneys' Fees and Expenses of up to $10,500,00.00 in attorneys' fees and expenses. *Id*. ¶ 7.1. Defendants agree to pay the Attorneys' Fees and Expenses Award determined by the Court within thirty (30) days of the Effective Date of the Settlement. *Id*.  This amount was negotiated after the material terms of the Settlement were reached and reflects the hourly fees and expenses incurred by Plaintiffs in the prosecution of these consolidated actions.

The Parties agree that Class Counsel may apply to the Court on behalf of Sheena Bibbs, Tina Bishop, Julian Graves, Martha Lacy, Taylor Lorimer, Sonya Mull, Vinnie Smith, and Jerome Whitney for an order granting a Service Award to each of them not to exceed $5,000, and on behalf of Beverly Gordon and Sandra Walker for an order granting a Service Award to each of them not to exceed $2,000, to be paid by Defendants. *Id*. ¶ 7.4.

Defendants will not be required to pay Attorney's Fees and Expenses or Service Awards "until the occurrence of the Effective Date" as well as the meeting of one of two conditions: either a) the time period for filing an appeal has exhausted with no such "appeal, motion for reconsideration, reargument and/or rehearing, or petition for writ of certiorari" having occurred;

or b) in the event of one of the above-listed actions occurring, the order "is affirmed with no further right of review" or the above-listed action is "denied or dismissed with no further right of review." *Id*. ¶ 7.6.

## ARGUMENT

### A. The Proposed Settlement Agreement Satisfies Rule 23 And The Sixth Circuit's Standards For Preliminary Approval

This Court should preliminarily approve the Settlement. Sixth Circuit law favors and encourages settlements—particularly in class actions and other complex matters where inherent costs, delays, and risks of protracted litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("*UAW*") (noting "the federal policy favoring settlement of class actions").

Approval of this proposed class action proceeds in two steps. First, the court grants preliminary approval of the Settlement and provisionally certifies the Settlement Class. Second, after notice of the Settlement is provided to the Class and the Court conducts a fairness hearing, the Court may grant final approval of the Settlement. *See* THE MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.63 ("Manual"); *see also Bobbitt v. Acad. Of Reporting Inc.*, 2009 WL 2168833, at *1 (E.D. Mich. Jul. 21, 2009) (citing authorities).[7]

Rule 23(e)(1)(B)(i) directs a court to determine, at the preliminary approval stage, whether it "will likely be able to … approve the proposal under Rule 23(e)(2)." *Busby v. Bonner*, 2021 WL 4127775, at *2 (W.D. Tenn. Jan. 28, 2021) (Lipman, J.). Under Rule 23(e)(2), a court must review

---

[7] At the final Fairness Hearing, the Court will determine whether the proposed Settlement satisfies Fed. R. Civ. P. 23(e), which provides that a court may approve a proposed class settlement "on finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also In re Skechers Tonig Shoe Prods. Liab. Litig.*, 2012 WL 3312668, at *8 (W.D. Ky. Aug. 13, 2012); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 205 F.R.D. 330, 352 (N.D. Ohio 2001).

whether a proposed settlement is "fair, reasonable, and adequate after considering" four factors: (i) the class representatives and class counsel have adequately represented the class; (ii) the proposal was negotiated at arm's length; (iii) the relief provided the class is adequate; and (iv) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D); *Fitzgerald v. P. L. Mktg., Inc.*, 2020 WL 7764969, at *11 (W.D. Tenn. Feb. 13, 2020) (explaining that, effective December 1, 2018, Rule 23(e) sets out "a new rubric" of four factors to consider when determining whether to grant a preliminary approval of a class action).

The Rule 23(e) factors overlap with the Sixth Circuit's factors for considering a settlement's fairness, reasonableness, and adequacy: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW*, 497 F.3d at 631.

Here, the Settlement Agreement: (1) was entered into after adequate representation and arm's length negotiations before two experienced mediators, extensive factual and legal investigation, and more than a year of hard-fought litigation; (2) provides significant monetary relief for the Settlement Class in light of the risks, costs, and length of continued litigation; and (3) in the opinion of experienced proposed Settlement Class Counsel, has no deficiencies and treats Class Members equitably.  Accordingly, proposed Settlement Class Counsel believe that the Settlement Agreement is in the best interests of the Settlement Class and should be preliminarily approved.

### 1. The Settlement Was Reached After Adequate Representation and Arm's-Length Negotiation.

The first two Rule 23(e)(2) factors support preliminary approval. The Settlement Agreement here is the result of lengthy and hard-fought litigation over the course of more than a year, and intense negotiations with the assistance of two preeminent mediators between counsel experienced in complex class action litigation. Decl. of J. Gerard Stranch, IV ("Stranch Decl.") at ¶¶ 3-6, attached hereto as Exhibit 2. With extensive fact discovery and multiple depositions complete, proposed Settlement Class Counsel were well-informed about the facts and strengths of the claims asserted when the most recent negotiations began. The Parties' negotiations included mediation on November 9, 2022, before Randall W. Wulff of Wulff, Quinby Sochynsky. *Id.* at ¶5. A second round of mediation was held on April 18, 2023, before the Honorable Janice M. Holder of the Tennessee Academy of Mediators & Arbitrators. As a result of this second mediation, the Parties reached a Settlement. *Id.* at ¶ 6.

The Parties' negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F.Supp.2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, 2013 WL 5934019, at *2 (W.D. Ky. Nov. 1, 2013). Because the Settlement "arose out of arms-length, non-collusive negotiations[,]" the primary procedural factor is met and the Court may presume the settlement to be fair, adequate, and reasonable. Wm. B. Rubinstein, *Newberg and Rubenstein on Class Actions* § 13.14 (6th ed. 2022).

### 2. The Proposed Settlement Provides Adequate Relief in Light of the Risks, Costs, and Length of Continued Litigation.

Rule 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness

of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Each of these factors supports preliminarily approving the Settlement.

The Settlement is meaningful and provides substantial benefits to the Settlement Class. The monetary recovery—which constitutes a significant portion of the maximum potential damages recovery—is sufficient, meaningful, and provides immediate benefits to the Settlement Class. Stranch Decl. at ¶ 7.

Continued litigation would be risky, costly, and lengthy. The proposed Settlement Agreement offers guaranteed value to the Settlement Class. Family Dollar has also worked closely with the Food and Drug Administration to implement extensive remedial actions to help prevent issues like those alleged to have occurred at the West Memphis Distribution Center from occurring in the future. These corrective actions include, for example: the retention of a number of third-party consultants with expertise in food safety and regulatory compliance; the implementation of more than sixty Standard Operating Procedures addressing topics including, among others, integrated pest management, sanitation, employee training, food safety, and preventative maintenance; the creation of a large food safety department; and the significant enhancement of compliance systems and processes throughout the organization. Settlement Agreement at ¶ 2.14. While Plaintiffs were confident of their ability to prevail in front of a jury, a trial on the issues in the case would have exposed the Class to significant risk.

Defendants would likely have asserted various arguments and defenses at class certification, summary judgment and/or trial, and a jury trial might well turn on questions of proof, many of which would be the subject of dueling expert testimony, particularly regarding causation

and damages, making the outcome of such a trial uncertain for both parties. *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) ("[t]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery" and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict").

Finally, the passage of time would introduce more risks in terms of appeals and possible changes in the law that may make future recoveries less valuable than recovery today. Hence "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Id*. at 525.

### 3. The Proposed Settlement Has No Obvious Deficiencies and Treats Class Members Equitably.

As discussed above, the recovery constitutes a significant and certain benefit for the members of the Settlement Class. All members of the Settlement Class, including the Class representatives, will be treated fairly and in a similar manner, each recovering the same fully transferable, non-expirable Family Dollar Gift Card. Nothing during the negotiations or the terms of the Settlement itself presents any grounds to doubt the fairness of the Settlement. Rather, the substantial relief, the arm's length nature of the negotiations, and the participation of sophisticated proposed Settlement Class Counsel, support a finding that the proposed Settlement has no obvious deficiencies and treats all members of the Settlement Class fairly.

### B. The Court Should Provisionally Certify The Proposed Settlement Class

To preliminarily approve the Settlement, the Court must also find that it will likely be able

to certify the class for purposes of judgment on the proposal.[8] Fed. R. Civ. P. 23(e)(1)(B)(i-ii). Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A court may grant certification in light of settlement where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See In re Packaged Ice Antitrust Litig.*, 2010 WL 5638219, at *1 (E.D. Mich. Sept. 2, 2010).

### 1. The Requirements of Rule 23(a) Are Satisfied.

#### a. Numerosity.

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." Based on discovery in the case, the proposed consumer class consists of more than one million individuals strewn across six states and multiple jurisdictions. Weisbrot Decl. at ¶ 23. "While no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012) (internal citations omitted). As a result of the large number of members of the Settlement Class and their geographic distribution throughout the United States, joinder is impracticable.

#### b. Common Questions of Law and Fact

Commonality under Fed. R. Civ. P. 23(a)(2) requires only a single factual or legal issue common to all class members. *Hicks v. State Farm Fire and Casualty Co.*, 965 F.3d 452, 458 (6th Cir. 2020); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013). Many factual and legal issues are common, including that rodents were allegedly

---

[8] As part of the Settlement Agreement, Defendants reserve all rights to oppose class certification in the event that the Settlement does not become final and have only agreed to provisional class certification for Settlement purposes.

present at times in Family Dollar's West Memphis Distribution Center, which allegedly resulted in Family Dollar selling potentially contaminated products in certain Family Dollar stores located in certain states.   Commonality has been satisfied.

### c.  Typicality

Proposed class representatives' claims are typical under Fed. R. Civ. P. 23(a)(3) if those claims are based on the same course of conduct as those of other class members and the same legal theory. *Yost v. First Horizon Nat. Corp.*, 2011 WL 2182262, at *8 (W.D. Tenn. June 3, 2011) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). Here, the claims of the members of the Settlement Class are based on the same challenged conduct and the same deceptive trade practice theories, and the Class Representatives seek the same damages as the absent Settlement Class Members. Typicality is satisfied.

### d.  Adequacy

Adequacy under Fed. R. Civ. P. 23(a)(4) requires that class counsel and the class representatives vigorously pursue the interests of the absent class members and share common interests. *Busby v. Bonner*, 466 F. Supp. 3d 821, 833 (W.D. Tenn. 2020) (citing *In re Am. Med. Sys.*, 75 F.3d at 1083). The Sixth Circuit "looks to two criteria for determining whether the representative of the class will be adequate: [t]he representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976). Courts "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Nationwide*, 693 F.3d at 543. Here, proposed Settlement Class Counsel were appointed by the Court to represent the consolidated plaintiff class in the MDL; they are imminently qualified with decades of experience prosecuting complex class actions and managing the attendant

16

settlements; and have dedicated hundreds of thousands of dollars in their time and resources in hard costs litigating on behalf of the Proposed Settlement Class in these complex consolidated actions. Similarly, the proposed Class representative has fulfilled their duties throughout the litigation and carried the burden of their discovery and other obligations.

Proposed Settlement Class Counsel and Class Representative of the Settlement Class have no conflicts of interest with the absent members of the Settlement Class they seek to represent. To render counsel or a class representative inadequate, a conflict must be fundamental, central to the lawsuit, and nonspeculative. *See In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 238-41 (N.D. Ohio 2014) ("to forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class as a whole"); *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *20 (E.D. Mich. July 13, 2006) ("[O]nly a conflict that goes to the very subject matter of the [claims] will defeat a party's claim to representative status").

Fed. R. Civ. P. 23(g) also requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The proposed Settlement Class is represented by counsel with extensive experience in complex consumer class action litigation. *See Marcus v. Kan., Dep't. of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002)( ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation."). Proposed Settlement Class Counsel have vigorously prosecuted the class claims for over a year through discovery. The Court should appoint them Settlement Class Counsel.

### 2. The Proposed Settlement Class Satisfies Rule 23(b)(3)

The proposed Settlement Class qualifies for certification under Rule 23(b)(3), because the Settlement Class meets two requirements beyond the Rule 23(a) prerequisites: common questions predominate over any questions affecting only individual members; and class resolution is superior

to other available methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615.

### a. Common Questions of Law and Fact Predominate.

Predominance of common questions is satisfied here, especially in light of settlement. "Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *Whirlpool*, 722 F.3d at 859. Instead, "a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) ("*Cardizem I*"). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* "[T]he 'mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda v. VHS of Mich. Inc.*, 296 F.R.D. at 535 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). Further, the Supreme Court has instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor the class." *Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013).

The litigation here focused on common issues of fact. Namely whether there were rodents present in Family Dollar's West Memphis Distribution Center and whether the products in the West Memphis Distribution Center were contaminated, and whether Defendants offered to their consumers products that had been compromised by rodents. Each individual consumer who opted to purchase products sold by Defendant during the relevant time period from an Affected Family Dollar Store was similarly tied to these common issues of fact. Members of the Settlement Class'

claims all focus on the same operative set of facts and legal theories. The predominance requirement for a settlement class is met here as "[a]ll claims arise out of the same course of defendants' conduct; [and] all share a common nucleus of operative fact, supplying the necessary cohesion." *In re Am. Int'l Grp. Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (quotation omitted).

### b. Class Action is the Superior Method to Adjudicate These Claims.

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *See Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *4 (N.D. Ohio Mar. 8, 2010).

By the nature of the claims at issue, a class action is the superior method for adjudication. This case involves multiple state legal schemes, jurisdictions, and a complex web of Defendants' intermingled business entities; moreover, the remedy achievable by an individual plaintiff is wildly disproportionate to the costs of litigating to that end. Not only has this case already been consolidated in recognition of the potential for multiple inconsistent rulings across different jurisdictions, but the treatment of this case as a class action affords the proposed class the best opportunity to receive a fair resolution while acting as the most efficient use of the court's resources to achieve that resolution. The interests of members of the proposed Settlement Class' individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *See Cardizem I*, 200 F.R.d. at 235-26 (finding that class action is superior because it ensures fair and efficient adjudication). Settling this case as a class action will conserve

both judicial and private resources and would hasten the members of the Settlement Class's recoveries.

**C.  The Court Should Authorize Dissemination Of Notice To The Settlement Class**

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." *See also Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (All that notice must do "is fairly apprise . . . prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests") (internal quotation marks and citations omitted). The notice may be provided by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2). The Notice and dissemination plan readily meets these standards.

Notice will be achieved through direct email notice, digital advertising, publication in *People* magazine circulated in Alabama, Arkansas, Louisiana, Mississippi, Missouri, and Tennessee, and paid Google advertising. Weisbrot Decl. at ¶¶ 17, 19-28, 29, 20. Notice is expected to reach 80.17% of the Target Audience who will see a digital advertisement concerning the Settlement an average of 3.36 times each. *Id.* at ¶ 13. The 80.17% reach is independent from the email notice efforts and does not include the settlement website or toll-free hotline. *Id.* at ¶ 14. The 80.17% notice plan is considered to be  a "high percentage" and is within the "norm." *Id.* at ¶ 15 (quoting Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide for Judges," at 27 (3d Ed. 2010).

### D.  The Court Should Appoint Angeion As Settlement Administrator

Plaintiffs ask the Court to appoint Angeion to oversee the administration of the Settlement, including disseminating notice to the Settlement Class, approving submitted Claims, and distributing the Family Dollar Gift Cards to qualifying Class Members. Angeion is an experienced settlement and claims administration firm with sophisticated technological capabilities and is staffed by personnel well-versed in consumer protection issues and class action litigation. Angeion, with oversight from proposed Settlement Class Counsel, will handle all aspects of providing notice to potential members of the Settlement Class and administering their claims, including mailing and publishing the notice, managing a call center and website to handle all questions regarding completion and submission of the claim forms, physically processing the Claims and inputting the data on computers, reviewing Claims, informing members of the Settlement Class about the completeness or possible deficiency of their Claims, and ultimately distributing the Settlement Fund, subject to Court Approval.

### E.  The Court Should Schedule A Fairness Hearing To Approve The Settlement

The last step in the settlement approval process is the final approval hearing at which the Court may hear all evidence necessary to evaluate the proposed Settlement. At that hearing, proponents of the Settlement may explain and describe their terms and conditions and offer argument in support of the Settlement's approval, and members of the Settlement Class or their counsel may be heard regarding the proposed Settlement if they choose. Plaintiffs propose the following schedule of events necessary for a hearing on final approval of the Settlement:

| __ACTION__ | __DATE__ |
|---|---|
| Notice Commences (Notice Date) | Within 15 days following entry of this Order |

| **ACTION** | **DATE** |
|---|---|
| Opt-Out Deadline | 30 days after Notice Date |
| Motion for Attorneys' Fees and Expenses and Service Awards | 7 days prior to the Objection Deadline |
| Objection Deadline | 30 days after Notice Date |
| Claims Submission Deadline | 30 days after Notice Date |
| Final Approval Brief and Response to Objections Due | 90 days after the Notice Date |
| Proof of Notice Submitted | At least 35 days prior to the Final Approval Hearing |
| Final Approval Hearing | (To be scheduled no less than 35 days after the filing of the Final Approval Brief and Response to Objections) |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court **GRANT** this motion in its entirety and enter an order: (i) granting preliminary approval of the Settlement Agreement; (ii) provisionally certifying the proposed Settlement Class under Fed. R. Civ. P. 23; (iii) appointing certain Plaintiffs as Class Representatives; as well as, J. Gerard Stranch, IV; Sarah Sterling Aldridge; and Charles J. LaDuca as Settlement Class Counsel; (iv) approving the notice plan for the Settlement Class; (v) appointing Angeion as Settlement Claims Administrator, and (vi) approving the proposed schedule for completing the settlement process and setting a date for a final Fairness Hearing.

Dated: June 19, 2023                              /s/ *J. Gerard Stranch, IV*

J. Gerard Stranch, IV
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 27203
Tel: (615) 254-8801
gstranch@stranchlaw.com

Sarah Sterling Aldridge
BARRETT LAW GROUP, P.A.
404 Court Square North
Lexington, MS 39095
Tel: (662) 834-2488
saldridge@barrettlawgroup.com

*Interim Co-Lead Counsel*

Charles LaDuca
Cuneo Gilbert & LaDuca, LLP
4725 Wisconsin Ave., NW, Ste. 200
Washington, DC 20016
Tel: 202-789-3960
charles@cuneolaw.com

*Attorney on the Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

I, J. Gerard Stranch, IV, hereby certify that the foregoing Memorandum in Support of

Plaintiffs' Unopposed Motion For Preliminary Approval Of Consolidated Class Action Settlement

was served on June 19, 2023, via e-mail and the Court's ECF system to the following:

> Christopher Chorba
> GIBSON, DUNN & CRUTCHER LLP
> 333 South Grand Avenue
> Los Angeles, CA 90071
> Telephone: 213-229-7000
> Facsimile: 213-229-7520
> cchorba@gibsondunn.com
>
> Jason R. Meltzer
> Jesenka Mrdjenovic
> GIBSON, DUNN & CRUTCHER LLP
> 1050 Connecticut Avenue, N.W.
> Washington, D.C. 20036
> Telephone: 202-955-8500
> Facsimile: 202-467-0539
> jmeltzer@gibsondunn.com
> jmrdjenovic@gibsondunn.com
>
> *Attorneys for Defendants*

/s/    *J. Gerard Stranch, IV*